## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNIE CLAY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 09-1612 (BAH) |
| | Judge Beryl A. Howell |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## MEMORANDUM AND ORDER

The plaintiff, Annie Clay, brings this action under the Individuals with Disabilities

Education Act, as amended, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"), against the District of

Columbia on her own behalf and on behalf of her granddaughter, Amber Kelsey ("A.K."), who

was a sixteen year-old resident of the District of Columbia at the time this lawsuit was filed.

Complaint ("Compl."), ECF No. 1 at 3; Plaintiffs' First Amended Complaint ("Am. Compl."),

ECF No. 18 at 2-3.[1]  The plaintiffs[2] seek a reversal of a Hearing Officer Determination ("HOD")

issued on May 28, 2009, by the District of Columbia Office of the State Superintendent of

Education, Office of Review and Compliance, Student Hearing Office ("Hearing Office").  The

---

[1] The First Amended Complaint, ECF No. 18, is the operative complaint in this action.

[2] The plaintiffs in this action are Annie Clay and her granddaughter Amber Kelsey ("A.K.") who was a minor when this case began, but has since reached the age of majority.  The Court has granted the Plaintiffs' Motion to Substitute Amber Kelsey as Plaintiff in Her Own Right, ECF No. 58, to which the defendant consented.  *See* Minute Order (Apr. 24, 2013).  A.K. is now over 18 years of age, and her grandmother thus lacks standing to bring claims under IDEA in A.K.'s name.  *See Brooks v. District of Columbia*, 841 F. Supp. 2d 253, 260-61 (D.D.C. 2012).  Since the only remaining claims in this lawsuit are under IDEA, A.K. is the only plaintiff with standing at this stage. Nevertheless, in order to minimize confusion, the Court will continue to refer to the "plaintiffs" in plural form throughout this Memorandum and Order in order to be consistent with the parties' filings and this Court's earlier decisions in this case, all of which refer to the "plaintiffs."  In referring to the underlying administrative proceedings, however, the Court refers to Annie Clay as the sole "plaintiff" as she alone filed the administrative complaints as grandmother and next friend of A.K.  *See, e.g.*, Hearing Officer Determination ("HOD"), ECF No. 27-1, at 8.

HOD dismissed the plaintiff's amended administrative complaint[3] without prejudice due to the plaintiff's failure to comply with the notice pleading standards of Federal Rule of Civil Procedure 12(b)(6) and the pleading standards of that forum.  *See* Administrative Record ("AR"), ECF No. 27-1, at 8 (HOD).[4]  The plaintiffs also seek a judgment that A.K. was denied a Free Appropriate Public Education ("FAPE") from March 19, 2007 through June 2008, a period which spans the 2006-2007 and 2007-2008 school years, while A.K. attended Rock Creek Academy.  As a result, the plaintiffs contend that A.K. is entitled to compensatory education services, specifically in the form of speech and language therapy.[5]  Pending before the Court are the Plaintiffs' Motion for Summary Judgment, ECF No. 41, and the Defendant's Cross Motion for Summary Judgment, ECF No. 46.  The Magistrate Judge to whom these motions were referred submitted a report recommending that both motions be denied and that the case be remanded to the Hearing Office.  Report and Recommendation, ECF No. 54 at 12.  The parties have objected to this report and recommendation.  For the reasons explained below, each Motion for Summary Judgment is granted in part and denied in part.

---

[3] The "amended administrative complaint" filed in the underlying administrative proceedings is distinct, and differs, from the operative First Amended Complaint in this action.

[4] The Administrative Record in this case consists of a total of 340 pages and is docketed, in four parts, at ECF No. 27.  *See* ECF Nos. 27-1 (AR Part 1, AR 1-87); 27-2 (AR Part 2, AR 88-164); 27-3 (AR Part 3, AR 165-265); and 27-4 (AR Part 4, AR 266-342).

[5] IDEA contains a two-year statute of limitations, *see* 20 U.S.C. § 1415(b)(6)(B).  Since plaintiff Clay filed her administrative complaint underlying this matter on March 19, 2009, the plaintiffs may only assert claims beginning on March 19, 2007, which was during the 2006-2007 school year.  Thus, this Court previously granted the Defendant's Motion for Partial Dismissal of the Amended Complaint, ECF No. 19, and, *inter alia*, dismissed the plaintiffs' claims arising prior to the 2006-2007 school year.  *See Clay v. District of Columbia*, 831 F. Supp. 2d 36 (D.D.C. 2011).  In their Motion for Summary Judgment, ECF No. 41, the plaintiffs specifically allege that the District of Columbia Public Schools ("DCPS") failed to provide speech therapy to A.K. from March 19, 2007 through June 2008.  Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem."), ECF No. 41, at 23.

# I.   BACKGROUND

## A.   FACTUAL AND PROCEDURAL HISTORY[6]

### 1.   A.K.'s Educational Background

A.K. was "a child with a disability within the meaning of IDEA."  Def.'s Answer to Pls.'

First Amended Complaint, ECF No. 23, at 1.  In the course of her education in the District of

Columbia Public Schools ("DCPS"), A.K. was placed in at least three different schools by

DCPS: first, the Lab School of Washington, a private school, where she was a student from

1999-2003; Rock Creek Academy, where she was a student from 2003-2007; and Oak Valley

Center beginning in 2008.  The heart of the plaintiffs' lawsuit is that, although all of A.K.'s

speech evaluations from 2000-2007 recommended speech and language therapy, A.K. was

denied speech and language therapy while she was a student at Rock Creek Academy.  Am.

Compl. ¶¶ 1-3, 11-14.  Indeed, as explained below, the AR reveals a total of five speech

evaluations of A.K. during her time in DCPS, *all* of which called for speech and language

therapy for A.K.  It is also clear from the record that A.K. was denied that speech and language

therapy for at least some of the time she attended Rock Creek Academy.  The Court will briefly

review A.K.'s educational background before delving into the specific issues raised by the

parties.

### i.   The Lab School

While A.K. was a student at the Lab School, from first through third grade, she "received

both specialized instruction in Reading and intensive Speech Therapy."  Am. Compl. at 4-5.  The

---

[6] This Court incorporates by reference the factual and procedural history set out in the two earlier Memorandum
Opinions issued in this case.  *See Clay v. District of Columbia*, 831 F. Supp. 2d 36 (D.D.C. 2011); *Clay v. District of
Columbia*, No. 09-1612, 2010 U.S. Dist. LEXIS 103569 (D.D.C. Sept. 30, 2010).  The Court will thus only briefly
recount the plaintiffs' factual allegations here.  The earliest of these Memorandum Opinions was authored by Judge
Reggie Walton of the United States District Court for the District of Columbia.  This case was subsequently
randomly assigned to the undersigned Judge on January 20, 2011.

need for this therapy was reflected in a series of evaluations throughout her time at the Lab School.  In September of 1999, a Test Score Summary of Most Recent Formal Speech-Language Assessment recommended that A.K. "receive one 45-minute individual therapy session, and one 45-minute small group session per week, as well as one consultation period per month."  AR 245.  In January 2000, the Annual Speech and Language Report, based on the September 1999 tests, documented that A.K. had Mixed Receptive-Expressive Language Disorder and Phonological Disorder, and recommended that she "continue to receive one individual and one small group speech and language therapy session per week and one consultative period per month for the 2000-2001 school year."  AR 238 (Annual Speech and Language Progress Report, dated January 30, 2000) ("Evaluation One").  In February of 2003, the Annual Speech and Language Report documented again that A.K. had Mixed Receptive-Expressive Language Disorder and Phonological Disorder, as well as Reading Disorder and Disorder of Written Expression.  The report recommended that A.K. "receive one individual 45-minute session and one small group 45-minute session per week" (presumably referring to speech-language therapy).  AR 235 (Annual Speech and Language Report, dated February 10, 2003) ("Evaluation Two").

## ii.     Rock Creek Academy

In the spring of 2003, when A.K. was in the fourth grade, DCPS transferred her to Rock Creek Academy and, according to the plaintiffs, terminated her speech therapy.  Am. Compl. at 5.  There is no evaluation or report in the record justifying why A.K.'s speech therapy was terminated at that time, after she had consistently required speech and language therapy at the Lab School.[7]  There are no speech evaluations in the record from 2003 through 2006.

---

[7] An evaluation of A.K. conducted in 2007 contains a reference to a 2003 evaluation of A.K. and concludes based on that earlier evaluation that A.K. did "not qualify for speech and language intervention services under DCPS' guidelines and regulations for IDEA," AR 141 (Speech-Language Evaluation).  The 2003 evaluation, however,

There is, however, an Individualized Education Program ("IEP"), the first of three IEPs in the record, dated September of 2006, which "placed [A.K.] out of the general education setting," and "provid[ed] her with approximately 26.5 hours of specialized instruction per week, 1.5 hours of psychological counseling per week, and 15 minutes of occupational therapy per week."  Def.'s Mem. in Supp. of Def.'s Cross Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Mem."), ECF No. 46, at 4 (citing AR 123, IEP) ("2006 IEP").  In contrast to the services provided to A.K. at the Lab School, the IEP did not include speech and language services.  *Id.*

Almost one year later, in August of 2007, A.K. had a Speech/Language Evaluation, and the evaluator recommended that A.K. "receive one hour of direct speech/language intervention per week."  *Id.* (citing AR 212, Speech-Language Evaluation) ("Evaluation Three").  As a consequence, in September of 2007, the Multi-Disciplinary Team ("MDT") met to "review and revise" A.K.'s IEP, and at that time the IEP was revised to "provide A.K. with 24.5 hours per week of specialized instruction, 1.5 hours per week of psychological counseling, one hour per week of occupational therapy, and one half-hour per week of speech/language therapy."  *Id.* (citing AR 190, IEP) ("2007 IEP").  Thus, the 2007 IEP provided only half of the speech therapy recommended by the speech/language evaluator.

Unfortunately, even the reduced amount of speech therapy required under the IEP was not provided.  On March 6, 2008, Rock Creek Academy sent plaintiff Clay a letter, informing her that A.K. "was not receiving the speech/language services in accordance with her IEP because of a staffing shortage."  *Id.* at 5 (citing AR 214, Letter from Rock Creek Academy).  Rock Creek Academy assured the plaintiff that "[t]he therapy hours your child is owed are carefully tracked

---

appears nowhere in the record and would be at odds with all five of the speech evaluations in the record, including the evaluation that A.K. had in February of 2003 at the Lab School just before she was transferred to Rock Creek Academy.

and your child will receive compensation for these hours as soon as we are fully staffed." AR 214. There is no other correspondence from Rock Creek Academy in the AR suggesting that this problem was ever resolved, however, nor that A.K. was compensated for the hours she missed.

### iii.    Oak Valley Center

In June of 2008, the plaintiff "obtained a placement for A.K. at Oak Valley Center," where A.K. was enrolled in the tenth grade. Am. Compl. at 5. In an evaluation shortly thereafter, Oak Valley Center found that A.K.'s "[r]eading abilities were . . . some 5 grades below grade level, and her very poor Reading comprehension skills greatly interfered with her ability to comprehend Tenth Grade classroom work." *Id*.; AR 179-80 (Speech and Language Phonological Awareness Assessment) ("Evaluation Four"). Coincidentally, these "5 grades below grade level" correspond to the five grades A.K. spent at Rock Creek Academy, suggesting that her learning progress essentially halted after DCPS removed her from the Lab School. The evaluation of October 21, 2008 notes that when A.K. began at Oak Valley Center in June 2008, she was given 30 minutes a week of speech and language therapy, and that her speech and language therapy was subsequently increased, in September 2008, to 60 minutes per week. AR 179.

On October 23, 2008, the MDT again met to "review and revise" A.K.'s IEP. Def.'s Mem. at 5 (citing AR 177, IEP) ("2008 IEP"). "As a result of the meeting, A.K.'s IEP was revised to provide 26 hours per week of specialized instruction, one hour per week of counseling services, and three hours per week of speech/language services." *Id*. Her speech and language therapy was thus significantly increased.

The final evaluation in the AR, from March 2009, is consistent with all of A.K.'s other speech evaluations in the AR, again recommending speech and language therapy, noting specifically that "[t]he diagnostic learning evaluation indicates that [A.K.] will benefit from

intervention to develop her language and literacy skills.  Intensive instruction, (6 hours a day, 5 days a week) is recommended for an initial period of 10-12 weeks."  AR 169-71 ("Evaluation Five").

### 2.       Underlying Administrative Proceedings

On March 18, 2009, plaintiff Clay, A.K.'s grandmother, filed an administrative due process complaint with the DCPS Hearing Office, alleging, *inter alia*, that A.K. was a fifteen year-old student "diagnosed with Specific Learning Disabilities" at the Lab School, which she attended from September 1999 through spring 2003, AR 46 (Facts and Reasons for the Due Process Complaint); evaluations at the Lab School "noted that her Speech disorders impeded her ability to learn to read," *id*; and when A.K. was transferred to Rock Creek Academy in 2003, she was not "provide[d] . . . with Speech therapy following [her] placement there."  *Id*.  The plaintiff also alleged specifically that A.K. "underwent a Speech and Language Evaluation" in August 2007, which "determined that she required Speech therapy."  *Id*.  Yet, the plaintiff stated that "Rock Creek Academy did not provide [A.K.] with Speech [T]herapy during the 2007-2008 school year," that the "State Education Agency [SEA] failed adequately to monitor [A.K.'s] placement at Rock Creek Academy," and that, "[a]s a result, [A.K.] is reading far below grade level and is experiencing difficulties accessing the curriculum at Oak Valley Center."  *Id*.  The plaintiff further alleged that "Rock Creek Academy [thereby] denied [A.K.] accommodations that she required to benefit from her public education," and that Rock Creek Academy, and the SEA, "violated IDEA" and "denied [A.K.] FAPE."  *Id*.  The plaintiff thus sought "[a]n order requiring Rock Creek Academy and the SEA to provide [A.K.] with compensatory Speech therapy, specialized reading instruction, and tutoring until such time as her reading skills are age and grade appropriate."  *Id*.

After the plaintiff filed her administrative complaint on her granddaughter's behalf, what might have been a straightforward administrative process was diverted into what has now been years of litigation over the issue of whether A.K. was denied speech and language therapy while at Rock Creek Academy, the issue that was plainly the focus of the plaintiff's original administrative complaint.  The Court will briefly recount what transpired at the administrative level.

On March 31, 2009, the Hearing Officer informed the parties via email that she had reviewed the complaint in the case, and sought clarification of the plaintiff's counsel's claims, particularly with respect to which entity or school "failed to serve the Student."  AR 295 (Email from Hearing Officer, stating that "Without this information, your client will be prejudiced in that the Complaint may be dismissed for lack of sufficiency."); AR 5 (HOD, explaining that the Hearing Officer had requested that the plaintiff's counsel "file a memorandum explaining the claims in the Complaint and the alleged culpability of each respondent as the Complaint was poorly drafted and contained no section outlining Petitioner's legal claims").

The Hearing Officer also convened a pre-hearing conference on April 1, 2009 because she "wanted to clarify whether Petitioner actually intended to bring claims against Rock Creek, as a non-public school, or against DCPS as the LEA [Local Education Agency] charged with providing services at non-public schools."  AR 75-76 (Hearing Officer Interim Order).

The next day, on April 2, 2009, the plaintiff filed an amended administrative due process complaint solely against DCPS as the LEA.  AR 50-55.  In the amended due process complaint, the plaintiff alleged that despite the evaluations performed at the Lab School indicating that A.K.'s "[s]peech disorders impeded her ability to learn to read," she was not provided with speech and language therapy while at Rock Creek Academy from spring 2003, when A.K. was in fourth grade, through June 2008, when A.K. was in ninth grade.  AR 54 (Amended

Administrative Due Process Complaint).  "Throughout the period that DCPS placed [A.K.] at Rock Creek Academy," the amended complaint stated, "DCPS did not provide [A.K.] Speech and Language Therapy, and [A.K.] experienced increasing delays in her Reading abilities, as a result."  *Id.*  The plaintiff further alleged that based upon a Speech and Language evaluation of A.K. in August 2007, an IEP was developed for A.K. in September 2007 that "called for the provision of Speech and Language Therapy" to A.K, and, yet, "DCPS did not provide [A.K.] with Speech and Language therapy during the school year 2007-2008."  *Id.*  The plaintiff alleged that, "[a]s a result of DCPS' failure to provide [A.K.] with the Speech and Language Therapy that she required, [A.K.] is reading far below grade level and is experiencing difficulties accessing the curriculum" at her new school, the Oak Valley Center.  *Id.*  Thus, the plaintiff alleged that "DCPS violated IDEA and denied [A.K.] FAPE" pursuant to its responsibility to "provide students with disabilities whom it has placed in private schools with special education and related services pursuant to an IEP developed in conformity with Section 1414 of IDEA."  *Id.* (citing 20 U.S.C. § 1401(a)(9)).  The amended administrative complaint sought as relief "[a]n order requiring DCPS to provide [A.K.] with compensatory Speech and Language therapy, specialized reading instruction, and tutoring until such time as her reading skills are age and grade appropriate."  AR 55.

On April 10, 2009, the Hearing Officer issued an Interim Order permitting the filing of the plaintiff's amended complaint and consolidating it with the original complaint.  AR 76 (Hearing Officer Interim Order).  At that time, the Hearing Officer also ordered DCPS to file its response to the consolidated complaint on or before April 21, 2009.  *Id.*  The Hearing Officer warned that "DCPS' failure to comply with this order may result in a default judgment or in its being precluded from raising any defense not raised in the response, at the discretion of the Hearing Officer."  *Id.*

Three days after the Hearing Officer's deadline, on April 24, 2009, the DCPS filed a Response, Notice of Insufficiency, and Motion to Dismiss Petitioner's Due Process Complaint. AR 88-93.[8]  In its response, the DCPS raised arguments that the plaintiff's complaint should be dismissed because of the statute of limitations and the doctrine of laches, but *conceded* that A.K. was denied 11.6 hours of speech therapy during the spring of 2008 at Rock Creek Academy due to a staffing shortage there.  AR 90.  The DCPS claimed, however, that Rock Creek Academy "is not aware of any educational harm to the student from the missed hours."  *Id.*

In the meantime, following the filing of the plaintiff's amended complaint, the parties had difficulty scheduling a hearing date for the due process proceedings.   When the plaintiff filed her original administrative complaint she specifically requested hearing dates on April 10, April 13, or April 17, 2009, and indicated that, "Counsel and the student's parent are not available on other dates."  AR 47 (Fax Cover Sheet from Plaintiff to Hearing Coordinator, dated March 18, 2009).  The Hearing Officer set the hearing date for April 23, 2009 but, on April 10, 2009, vacated that hearing date in her Interim Order and stated that a new date for the hearing would be "determined on or before the date of the prehearing conference."  AR 76.

On April 16, 2009, the plaintiff's counsel wrote to the Hearing Officer by email informing her that she was available on April 22, 2009 and would prefer to have the proceeding before April 29, 2009.  AR 103 (Email from Plaintiff's counsel to Hearing Officer, dated April 16, 2009).  On April 21, 2009, the plaintiff's counsel again wrote to the Hearing Officer inquiring when a "new provisional notice of hearing and notice of PHC [pre-hearing conference]" would issue.  AR 104 (Email from Plaintiff's counsel to Hearing Officer, dated

---

[8] The DCPS' response mistakenly refers to a due process complaint notice "filed on or about February 25, 2009," among other typographical errors.  AR 88.  The plaintiff, however, filed her original complaint on March 18, 2009 and her amended complaint on April 2, 2009.  The DCPS' response appears to be a boiler-plate response in which some, but not all, of the details set forth in the plaintiff's administrative complaint were plugged in.  The plaintiff pointed out these errors to the Hearing Officer.  *See* Petitioner's Response to Defendant DCPS' Untimely Response to Petitioner's Amended Due Process Complaint, AR 117-19.

April 21, 2009).  No pre-hearing date was scheduled, however, and it appears from the AR that

part of the delay was that the defense counsel in the administrative proceeding (who is no longer

representing DCPS in this proceeding) had not yet replied to the Hearing Officer's email

requesting the parties' availability for a hearing.  *See* AR 103 (Email from Hearing Officer to the

parties, dated April 23, 2009) ("I STILL have not heard from [DCPS counsel] about the date and

time for the prehearing conference.  I had suggested several dates, of which only April 30 is still

available.  I am available after 4:00 p.m.") (emphasis in original).

On April 24, 2009, after finding that "[t]he scheduling of the due process hearing has

become so complicated and time consuming," the Hearing Officer sent an email to the parties,

requesting that the parties confer and provide her dates in May that suited both of their schedules

as well as the witnesses' availability.  AR 108 (Email from Hearing Officer listing her

availability as May 7, May 8, and May 18-28, as well as between 9 A.M. and 1 P.M. on May 6

and between 1 P.M. and 5 P.M. on May 1, 5, and 14).

The plaintiff's counsel responded that day and proposed either May 18 or May 22, the

only days her experts were available.  AR 106 (Email from Plaintiff's counsel).  The DCPS

counsel replied that he was unavailable on May 22 and only available for a two-and-a-half hour

block on May 18.  AR 107 (Email from DCPS counsel).  The parties then apparently settled on

May 29, 2009 for the hearing.  AR 108 (Email from Plaintiff's counsel to Hearing Officer).  At

that point, the Hearing Officer, apparently believing that May 29, 2009 was beyond the statutory

timeline for holding an IDEA hearing, requested a joint continuance motion from the parties.

DCPS' counsel asserted that, "DCPS is not making a motion for continuance.  Therefore it will

not be 'joint,'" to which the Hearing Officer replied, "It will be joint because you are the party

who is unavailable on the dates that [the plaintiff's counsel] and I are available."  AR 109

(Emails between DCPS counsel and Hearing Officer, dated April 24, 2009).  After more emails,

the DCPS counsel agreed he could be available for the whole day on May 18, 2009, one of the

dates suggested by the plaintiff's counsel.  AR 110 (Email from DCPS counsel to Hearing

Officer).  The Hearing Officer agreed to set the hearing date for May 18, 2009 "[a]s long as I

have the continuance motion from [the plaintiff's counsel]."  AR 114 (Email from Hearing

Officer to the Parties' counsel).

Accordingly, in order to proceed with a due process hearing on her claims, the plaintiff

filed a motion for continuance of the hearing date as required by the Hearing Officer.  AR 100-

02 (Motion for Continuance Filed on Hearing Officer's Order).  In the Motion for Continuance,

the plaintiff explained that (1) "[t]he Student Hearing Office did not issue a provisional notice of

hearing upon receipt of the Hearing Officer's order granting leave to amend[,]" (2) "[t]he

Student Hearing Office did not issue a provisional notice for a pre-hearing conference on receipt

of the Hearing Officer's order granting leave to amend[,]" and (3) "[t]hereafter, the Hearing

Officer was unable to schedule a pre-hearing conference" because DCPS' counsel did not

respond to the Hearing Officer's requests for times available for a pre-hearing conference.  *Id.* at

100.  All of this resulted, the plaintiff concluded, in the plaintiff not being able to get an eight-

hour hearing within the "35-day limit imposed by IDEA," and, since DCPS' counsel refused to

file a joint continuance motion, the Hearing Officer was requiring one from the plaintiff alone.

*Id*. at 101.

The Hearing Officer granted the Motion for Continuance and set the hearing date for May

18, 2009.  AR 283-87 (Interim Order on Continuance Motion).  The Interim Order granting the

Continuance Motion stated as "exceptional circumstances" for the continuance that May 18,

2009 "was the first date on which Petitioner's expert witnesses, the Hearing Officer, and both

counsel were available for an eight-hour due process hearing," and that "[b]oth counsel and the

Hearing Officer were available for an eight-hour due process hearing on other days prior to May

12

18, 2009, but Petitioner's expert witnesses were not available on those days." AR 283-84.

Notably, the Interim Order on the Continuance Motion did not point out that the plaintiff's

experts would have been available in April for a timely hearing, nor that the DCPS counsel's

failure to respond in a timely manner to the Hearing Officer regarding his availability also

delayed the process.

The hearing on May 18, 2009, scheduled to last all day and include the plaintiff's expert

witnesses, ended up focusing only on preliminary matters.   These preliminary matters included

(1) the entering of two stipulations between the parties, namely (a) the plaintiff withdrew her

claims before March 19, 2007, and (b) DCPS stipulated that A.K. missed 11.6 hours of speech

and language therapy in the spring of 2008, which the DCPS counsel clarified pertained to the

2007-2008 school year, rather than only spring of 2008, based on the calculations of Rock Creek

Academy.  AR 16, 26-27 (Hearing Transcript); and (2) the denial by the Hearing Officer of

DCPS' notice of insufficiency, which the hearing officer deemed justified because "Petitioner

provided notice – pleading notice.  The problem with this child and it all relates to speech and

language and the failure to provide it – her speech and language services." AR 25 (Hearing

Transcript).

Despite the denial of DCPS' notice of insufficiency, the Hearing Officer sought

clarification of the plaintiff's claims, noting that the complaint seemed to address "the level of

speech that was provided, or how much speech was provided," but did not include as "an issue

that there was, you know, a wrongful removal or eligibility decision made," or a challenge to a

particular IEP.  AR 18-19 (Hearing Transcript).  The plaintiff's counsel responded that the

complaint clearly alleged that DCPS prepared an evaluation of A.K. in August of 2007 and that

the DCPS was on notice from the complaint that "the problem extended back throughout her

schooling at Rock Creek, including through the 2006-2007 school year."  AR 20-22 (Hearing

13

Transcript).  Consistent with the stipulations, the plaintiff's counsel confirmed that she was

contesting only the period between March 19, 2007 through June 2008.  Nevertheless, the

Hearing Officer struggled to reconcile the complaint with the allegations outlined by the plaintiff

at the hearing – that DCPS should have been on notice that the child required speech therapy

during that period – and questioned whether the plaintiff was challenging particular IEPs and

what exactly the plaintiff was alleging.  AR 31-37 (Hearing Transcript).  "And this is why we

have specific ways we plead these complaints," the Hearing Officer stated.  AR 37 (Hearing

Transcript).  The Hearing Officer continued, stating, *inter alia*:

> We plead facts as in every form [sic] in the United States.  You plead your facts
> and then you state your claims.  Your claims should have been stated here; failure
> to develop an appropriate IEP in September 2007; failure to implement the 2007
> IEP; failure to provide [A.K.] speech and language services when DCPS was on
> notice in April 2007 that she needed speech and language or March 2007 that she
> needed the speech and language.  All we have here are lot [sic] of facts but we
> don't know what your claims are.  I mean, this is not much better than a letter,
> giving me a factual chronology.  I don't know what the claims are in this
> complaint.  And that's why we are having this hour and forty-three minute
> discussion about what the complaint is actually pleading.

AR 37-38 (Hearing Transcript).

Consequently, the Hearing Officer dismissed the administrative complaint without

prejudice, informing the plaintiff's counsel that she "may re-file the complaint tomorrow if you

like but we're making up claims as we go along."  AR 38 (Hearing Transcript).  The plaintiff's

counsel asked to proceed "with the claims that we have stated," but the Hearing Officer refused,

stating, "you haven't stated any claim.  I'm dismissing this without prejudice.  You stated facts."

AR 39 (Hearing Officer).  When A.K.'s grandmother started to speak, the Hearing Officer stated

"No.  I can't take any testimony from you.  I just want to let you know that your counsel's free to

re-file the case.  It's just that the pleadings didn't put either [DCPS counsel] or me on notice of

the claim she was bringing.  It's a – it's what we call a defect in pleading and it's really just

technical and it means she can come back tomorrow and file the exact same complaint." AR 40

(Hearing Officer).  The Hearing Officer then promised that she would try to expedite the case, if

the plaintiff's counsel re-filed the complaint the next day.  *Id*.  The hearing then concluded,

without the plaintiff having an opportunity to testify or to offer any expert testimony, which she

had prepared to offer on that day after the extended negotiations over scheduling the due process

hearing.

Following the hearing on May 18, 2009, the Hearing Officer issued the HOD, in which

the Hearing Officer represented that, because the DCPS filed its Notice of Insufficiency late,

"this Hearing Officer did not rule on the sufficiency motion."  AR 6 (HOD).  The plaintiffs

correctly point out that, contrary to that statement in the HOD, the Hearing Officer *did* in fact

rule on the Notice of Insufficiency during the hearing, stating: "The notice of insuffiency, I'm

going to deny.  Petitioner provided notice – pleading notice.  The problem with this child and it

all relates to speech and language and the failure to provide it – her speech and language

services."  AR 25 (Hearing Tr.); *see* Pls.' Mem. at 11-12.

Contrary to the Hearing Officer's statement in the due process hearing that the plaintiff's

complaint provided DCPS "pleading notice," the Hearing Officer reiterated in the HOD her

conclusion that "counsel for Petitioner failed to provide DCPS notice of the general nature of the

claims regarding the alleged failure of DCPS to provide the Student speech and language

services in the 2007-2008 school year," "failed to provide sufficient notice of Petitioner's claims

for DCPS to be able to respond to and/or defend Petitioner's allegations," and, further, that the

"Complaint and Amended Complaint failed to state any claims upon which relief may be

granted" under Federal Rule of Civil Procedure 12(b)(6) and the rules of the Hearing Office.  AR

8 (HOD).  Accordingly, the HOD stated that the plaintiff's amended complaint was dismissed

"without prejudice."  *Id*.  The HOD "informed Petitioner that she would be free to file another

complaint that complies with the rules of notice pleading the very next day," and that the Hearing Officer "would attempt to expedite the hearing so that the Student would not be prejudiced by the failings of her counsel." *Id.*

Notwithstanding the explicit invitation to re-file an amended administrative complaint, the HOD stated that "[t]his is the final administrative decision in this matter.  Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B)."  AR 9.  In short, a final decision was issued before any party was given the opportunity to present witnesses or any evidence to the Hearing Officer, other than two stipulations.

### 3.       District Court Proceedings

Instead of filing a second amended administrative complaint, as the Hearing Officer expressly invited at the hearing and in the HOD, plaintiff Clay, on her own behalf and as next friend of A.K., opted instead to file this action in the United States District Court for the District of Columbia against the District of Columbia, Michelle Rhee, in her official capacity as Chancellor, and Kerry Briggs, in her official capacity as Acting State Superintendent of Education, seeking reversal of the HOD "which denied them [their rights under IDEA and the Fifth Amendment] in violation of 20 U.S.C. §§ 1415(b)(6), 1415(f), 1415(h) and the Fifth Amendment."  Compl., ECF No. 1, at 2.

### i.       Resolution of Motions to Dismiss

The plaintiffs filed a First Amended Complaint, ECF No. 10, following full briefing of the defendants' motion to dismiss the Complaint, which the district judge then assigned to this case denied without prejudice.  *Clay v. District of Columbia*, No. 09-1612, 2010 U.S. Dist.

16

LEXIS 103569 (D.D.C. Sept. 30, 2010).[9]  The plaintiffs' seven-count Amended Complaint, ECF

No. 18, is the operative complaint in this matter.  The Amended Complaint alleges, *inter alia*,

that the defendants violated IDEA and deprived A.K. of a FAPE by denying her speech and

language therapy while at Rock Creek Academy and that the Hearing Officer, who the plaintiffs

allege was not qualified for her position, violated IDEA as well as the plaintiffs' due process

rights under the Fifth Amendment through numerous procedural errors and an erroneous HOD,

dismissing the administrative complaint.  *See* Am. Compl. at 15, 21-23.  The plaintiffs also

allege that the defendant violated their IDEA rights in violation of 42 U.S.C. § 1983.  *Id*. at 23.

The District of Columbia subsequently filed a partial motion to dismiss the Amended

Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Def.'s Mot. for

Partial Dismissal of Am. Compl., ECF No. 19 at 1.  Pursuant to Rule 12(b)(1), the District of

Columbia moved to dismiss for lack of subject matter jurisdiction (1) the plaintiffs' IDEA claims

involving school years "2003-2006" as barred by the statute of limitations, and (2) the plaintiffs'

Fifth Amendment and Section 1983 claims for failure to exhaust administrative remedies.  Def.'s

Mem. in Supp. of Def.'s Mot. for Partial Dismissal of Am. Compl., ECF No. 19, at 3.  The

partial motion to dismiss also sought to dismiss the Fifth Amendment and Section 1983 claims

under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *Id*.  The

plaintiffs also filed a Motion to Treat Allegations in Plaintiffs' First Amended Complaint as

Admitted, ECF No. 24.  Adopting the Magistrate Judge's recommendations with some

modification and explanation, the Court dismissed all claims arising prior to the 2006-2007

school year as well as all claims under 42 U.S.C. § 1983 and the Fifth Amendment, and also

---

[9] The defendants moved to strike the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) because it was filed five months after the defendants' dispositive motion and violated Federal Rule of Civil Procedure 15(a), ECF No. 11.  The plaintiffs' Motion for Leave to Amend Complaint, ECF No. 13, which was granted, clarified that they wished to drop the claims against defendants Rhee and Briggs, clarify their legal theories, and add factual allegations. *See id*. at 2.

denied the plaintiffs' motion to treat certain allegations in the Amended Complaint as admitted. *See Clay v. District of Columbia*, 831 F. Supp. 2d 36, 47 (D.D.C. 2011).

Accordingly, following this Court's resolution of these motions, the plaintiffs' remaining claims are in Counts I through V of the Amended Complaint, to the extent they are based on claims within the statute of limitations period, beginning on March 19, 2007, which allege that the defendants violated IDEA and deprived A.K. of a FAPE by denying her speech and language therapy while she was at Rock Creek Academy and that the Hearing Officer violated IDEA through numerous procedural errors and an erroneous HOD unsupported by the evidence in the record.  Am. Compl. at 21-23.

The parties subsequently filed cross-motions for summary judgment on the remaining claims.  *See* Pls.' Mot. for Summ. J., ECF No. 41; Def.'s Cross Mot. for Summ. J., ECF No. 46. These motions were referred to a Magistrate Judge for a Report and Recommendation.

### ii.        Magistrate Judge's Report and Recommendation

The Magistrate Judge issued a Report and Recommendation recommending "that both motions be denied, and that this action be remanded for administrative proceedings in accordance with the direction of the Student Hearing Office, Office of Review and Compliance, and the District of Columbia Office of the State Superintendent of Education."  Report and Recommendation, ECF No. 54, at 2.  The Magistrate Judge stated that "[t]he undersigned finds that the remand of this case for further administrative proceedings is the only remedy by which to ensure that a hearing officer will have the opportunity, in the first instance, to address the merits of Plaintiffs' claim that A.K. was denied a FAPE."  *Id.* at 10-11.  The Magistrate Judge noted that this remedy will ensure that A.K. "would not be prejudiced by the failings of her counsel."  *Id.* at 11 n.7.

The plaintiffs and the defendant subsequently filed timely objections to the Magistrate Judge's Report and Recommendation.  *See* Def.'s Objections to Report and Recommendation ("Def.'s Obj."), ECF No. 55; Pls.' Objections to the Report and Recommendation of the Magistrate Judge ("Pls.' Obj."), ECF No. 56.  The defendant objects that the Magistrate Judge makes no recommendation regarding the sufficiency of the plaintiffs' administrative complaint and contends that this "threshold issue" should be addressed by this Court.  Def.'s Obj. at 1-2.  Otherwise, upon remand, the Hearing Officer, who has already dismissed the administrative complaint for insufficiency, will simply adhere to her prior determination, which "would lead to the same result."  *Id.* at 2.  Consequently, the defendant requests that the Court rule on "whether the Plaintiffs' administrative complaint was legally sufficient."  *Id*.  The defendant further requests, that if this Court finds that the plaintiffs' administrative complaint was legally sufficient, the Court should remand the case for a hearing on the merits of the plaintiffs' administrative complaint.  *Id.*[10]  The plaintiffs also object that the Magistrate Judge did not reach the merits of their Motion for Summary Judgment, and request that the Court resolve the merits, which "all may be resolved without additional fact-finding."  Pls.' Obj. at 1, 6.  After considering the parties' objections, the Court will proceed to resolve the legal issue regarding the sufficiency of the plaintiffs' administrative complaint, as well as reach the merits of the plaintiffs' other claims.  Accordingly, the Court rejects the Magistrate Judge's recommendations in full, and, for the reasons explained below, grants in part and denies in part the pending Cross-Motions for Summary Judgment.

---

[10] The defendant also requests clarification of the "administrative actions contemplated" by the Report and Recommendation.  Def.'s Obj. at 3.  Since the Court rejects the Magistrate Judge's Recommendation, however, the Court need not focus on clarifying the recommendation.

II.     **LEGAL FRAMEWORK**

A.      *De Novo* **Review of the Magistrate Judge's Report and Recommendation**

When, as here, the Court has referred a case for full case management, the Magistrate

Judge determines all motions and matters that arise in the case, except for those matters specified

in Local Civil Rule 72.3, for which the Magistrate Judge will report proposed findings of fact

and a recommendation for disposition.  LCvR 72.3.  This Local Civil Rule is consistent with

Federal Rule of Civil Procedure 72(b), which provides for the referral of a pretrial matter

"dispositive of a claim or defense" to a Magistrate Judge to hear and make a "recommended

disposition."  FED. R. CIV. P. 72(b); *see also* LCvR 72.3(a)(3) ("At the request of the district

judge to whom the case is assigned, a magistrate judge may . . . submit . . . proposed findings of

fact and recommendations for the disposition of . . . motions . . . for summary judgment.").

Upon submission of the Magistrate Judge's recommended disposition, a "district judge shall

make a *de novo* determination of those portions of a magistrate judge's findings and

recommendations to which [an] objection is made," based upon the record before the Magistrate

Judge or based upon further evidence that the district judge may receive in a new hearing.  LCvR

72.3(c); *Brodie v. Worthington*, No. 09-1828, 2011 U.S. Dist. LEXIS 107422, at *3 n.2 (D.D.C.

Sept. 21, 2011) ("The Court has considered the Magistrate Judge's findings and

recommendations *de novo*.").  In this case, the parties have filed objections to the report and its

recommendations to remand the action without further determination of the legal issues

presented, and this Court will thus review the parties' motions *de novo*.

B.      **Summary Judgment Standard of Review of IDEA Hearing Officer**
        **Decision**

Any party aggrieved by a decision of a due process hearing officer under the IDEA may

appeal the findings and decision to any state court or a United States district court.  20 U.S.C. §

1415(i)(2).  When evaluating an appeal of an administrative decision, a court "(i) shall receive

the records of the administrative proceedings; (ii) shall hear additional evidence at the request of

a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief

as the court determines is appropriate."  *Id*. § 1415(i)(2)(C).  "Federal courts have interpreted

'appropriate relief' to include compensatory education as an equitable remedy to be granted upon

finding that a child has been denied FAPE under the Act."  *Flores ex rel. J.F. v. District of

Columbia*, 437 F. Supp. 2d 22, 30 (D.D.C. 2006) (quoting *Diatta v. District of Columbia*, 319 F.

Supp. 2d 57, 64 (D.D.C. 2004)).

Rather than applying the typical standard applicable to a summary judgment motion,

which may be granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a); *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Estate of Parsons v. Palestinian Auth.*, 651

F.3d 118, 123 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994), the court in an

IDEA case conducts a summary adjudication.  *Phillips ex rel. T.P. v. District of Columbia*, 736

F. Supp. 2d 240, 246 (D.D.C. 2010) ("If no additional evidence is introduced by the parties in a

civil suit seeking review of an administrative decision, a motion for summary judgment operates

as a motion for judgment based on the evidence comprising the record." (alterations and internal

quotation marks omitted) (quoting *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109

(D.D.C. 2005))); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 66–67 (D.D.C. 2005); *see

also Hanson ex rel. Hanson v. Smith*, 212 F. Supp. 2d 474, 480–81 (D. Md. 2002); *S.B. v.

District of Columbia*, 783 F. Supp. 2d 44, 50 (D.D.C. 2011) ("As no new evidence has been

submitted here, the Court will treat the parties' cross motions for summary judgment as motions

for judgment based on the administrative record.").

The court must resolve factual disputes based upon its own *de novo* review of the record and evaluation of the preponderance of the evidence, giving "due weight" to the factual findings of the IDEA Hearing Officer, depending upon the thoroughness and reasonableness of the administrative proceedings.  *See District of Columbia v. Doe*, 611 F.3d 888, 897 (D.C. Cir. 2010); *see also Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003)).  Where, as here, the administrative decision to reject the parent's claim for a due process hearing was predicated solely on the Hearing Officer's legal interpretation of applicable law, without consideration otherwise of the merits of the plaintiff's due process complaint, that decision is entitled to no deference since "the court draws its own legal conclusions *de novo*."  *Alexis v. Bd. of Educ.*, 286 F. Supp. 2d 551, 556 (D. Md. 2003) ("The hearing officer's conclusions of law, however, merit no such deference.").

## III.    DISCUSSION

In their Motion for Summary Judgment, the plaintiffs claim that they "never received a hearing on the merits of their complaint" for two reasons: (1) "the merits hearing (itself untimely under IDEA's regulations) was converted by the Hearing Officer into a hearing on the sufficiency of the Plaintiffs' complaint, in violation of IDEA procedural safeguards that explicitly barred the Hearing Officer from undertaking any sufficiency review at that stage of the proceedings," and, (2) "the Hearing Officer, applying an unlawful standard, dismissed Plaintiffs' due process complaint at that hearing, refusing to permit Plaintiffs to present any evidence on any issue raised in their complaint."  Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem."), ECF No. 41, at 4.  The plaintiffs argue that they are entitled to summary judgment because the "record of the administrative proceedings shows: (1) that they were improperly denied a hearing on the merits of their due process complaint notice[,] (2) that the administrative process below

pervasively violated the procedural safeguards which form the framework of the due process proceeding that is set forth in IDEA, (3) that, as a consequence, Plaintiffs were denied their substantive IDEA rights[,] and (4) that the documentary evidence submitted in those proceedings showed that A.K. was denied FAPE and is entitled to FAPE and is entitled to compensatory education services." *Id.* at 3.

The defendant argues, in response, that it is entitled to summary judgment because "the administrative hearing and issuance of the HOD were timely, and all other aspects of the administrative process were conducted in accordance with the IDEA." Def.'s Mem. at 3.

The Court first turns to what the defendant terms the "the threshold issue in this action," namely "the sufficiency of the Plaintiffs' administrative complaint," Def.'s Obj. at 1, and then to an analysis of the plaintiffs' remaining claims in Counts I through V of the Amended Complaint.

### A.      Sufficiency of the Plaintiffs' Administrative Complaint

In its Motion for Summary Judgment, the defendant contends that the plaintiff's amended administrative complaint "was legally insufficient" and that the Hearing Officer properly dismissed the complaint. Def.'s Mem. at 15. The Court disagrees. Pursuant to IDEA, if a Notice of Insufficiency is not properly filed by the defendant in response to an administrative complaint, then the complaint is deemed "sufficient" for review at the administrative level. *See* 20 U.S.C. § 1415(c)(2)(A) ("The due process complaint notice required under subsection (b)(7)(A) shall be deemed to be sufficient unless the party receiving the notice notifies the hearing officer and the other party in writing that the receiving party believes the notice has not met the requirements of subsection (b)(7)(A)"). "The party providing a hearing officer notification under subparagraph (A) shall provide the notification within 15 days of receiving the complaint." 20 U.S.C. § 1415(c)(2)(C).

Here, the plaintiff filed her amended administrative complaint on April 2, 2009, AR 50-55, but the DCPS did not file a Notice of Insufficiency until April 24, 2009, twenty-two days after the plaintiff filed her amended administrative complaint, AR 88-92.  This Notice of Insufficiency was thus untimely and the plaintiff's due process complaint notice should have been "deemed to be sufficient" under 20 U.S.C. § 1415(c)(2)(A), with the plaintiff allowed the opportunity to present her claims and expert witnesses before the Hearing Officer.

Unfortunately, that did not happen, and what transpired instead is rather convoluted. First, as noted, during the hearing, the Hearing Officer explicitly ruled on the defendant's Notice of Insufficiency, stating "The notice of insufficiency, I'm going to deny.  Petitioner provided notice – pleading notice.  The problem with this child and it all relates to speech and language and the failure to provide it – her speech and language services."  AR 25 (Hearing Tr.); *see* Pls.' Mem. at 12.  Second, despite clearly stating that the plaintiff's due process complaint provided the defendant "pleading notice" of the claims against it, the Hearing Officer then dismissed the plaintiff's complaint without prejudice stating, *inter alia*, that "[a]ll we have here are lot [sic] of facts but we don't know what your claims are.  I mean, this is not much better than a letter, giving me a factual chronology.  I don't know what the claims are in this complaint."  AR 37-39. Third, following the hearing, the Hearing Officer issued the HOD and represented that, because the DCPS filed its Notice of Insufficiency late, "this Hearing Officer did not rule on the sufficiency motion," AR 6, a statement which is patently incorrect because the Hearing Officer explicitly *denied* the Notice of Insufficiency as noted above.

The defendant concedes that its Notice of Insufficiency was untimely.  *See* Def.'s Mem. at 14-15.  The defendant argues, however, that the fifteen-day deadline for filing a notice of insufficiency "concerns an opposing parties' timeline concerning the sufficiency of the complaint," and "does not prohibit a hearing officer from reviewing an administrative complaint

during the course of a due process hearing and, *sua sponte*, dismissing the complaint because it does not meet the minimum pleading standards of Sup. Ct. Civ. R. 8," which the defendant argues applies in IDEA proceedings. *Id.* at 13-15.

The defendant's argument is unavailing for several reasons. First, by the plain language of 20 U.S.C. § 1415(c)(2)(A), "[t]he due process complaint notice required under subsection (b)(7)(A) shall be deemed to be sufficient unless the party receiving the notice notifies the hearing officer and the other party in writing that the receiving party believes the notice has not met the requirements of subsection (b)(7)(A)," and, under 20 U.S.C. § 1415(c)(2)(C), "[t]he party providing a hearing officer notification under subparagraph (A) shall provide the notification within 15 days of receiving the complaint." Where, as here, the defendant did not provide notification within fifteen days, the complaint should have been deemed "sufficient" and the plaintiff should have been allowed to proceed to a due process hearing on the merits of her claims. *See* 20 U.S.C. § 1415(c)(2)(C); 34 C.F.R. 300.508(d)(1) ("The due process complaint . . . must be deemed sufficient unless the party receiving the due process complaint notifies the hearing officer and the other party in writing, within 15 days of receipt of the due process complaint, that the receiving party believes the due process complaint does not meet the [sufficiency] requirements"); *K.E. v. Indep. Sch. Dist. No. 15*, No. 09-2433, 2010 WL 2132072, at *15 (D. Minn. May 24, 2010) ("In the absence of any such [timely sufficiency] objection, the [school district defendant] has waived its objections to the sufficiency of the amended due process complaint."). The defendant provides no authority at odds with this conclusion.

Second, even if the DCPS had timely contested the sufficiency of the plaintiffs' complaint in this case or the Hearing Officer were permitted to evaluate the sufficiency *sua sponte*, the plaintiff's complaint *did* meet the requirements of 20 U.S.C. § 1415(b)(7)(A). The

requirements are only that the complaint include the following information: the name of the

child, the address of the child's residence, the name of the school the child is attending, a

description of the nature of the child's problem relating to the proposed initiation or change, and

a proposed resolution of the problem to the extent known and available to the party at the time.

20 U.S.C. § 1415(b)(7)(A); 34 C.F.R. § 300.508(b).  Here, the plaintiff's amended complaint

included the child's identification information, including name, address, and current school, *see*

AR 50 (Due Process Complaint Notice/Amended Complaint Notice), and the complaint provided

notice to the defendant about (1) the dates during which A.K. was denied a FAPE (2003-2008),

(2) the basis for the denial, namely that A.K. was not provided the specialized instruction and

speech and language therapy that she required to learn to read, (3) the school at issue, Rock

Creek Academy, where A.K. had been placed and which denied her a FAPE, *see* AR 54-55; *see*

*also* AR 90 (DCPS response, interpreting the plaintiff's complaint to be "requesting a review of a

question of FAPE for a time period beginning in the Spring of 2003"), and (4) the relief sought

by the plaintiff.  The complaint was therefore plainly sufficient, both because there was no

timely filed objection to its sufficiency and because it included the requirements set forth in

subsection (b)(7)(A).  *See Alexandra R. ex rel. Burke v. Brookline Sch. Dist.*, No. 06-cv-0215,

2009 WL 2957991, at *4 (D.N.H. Sept. 10, 2009) (concluding that when a school district

contested the sufficiency of parents' due process hearing complaint through a motion to dismiss,

over two months after the parents filed the hearing request, the hearing officer "should have

deemed the hearing request sufficient not only because the factual allegations in the parents'

complaint complied with the IDEA's 'minimal pleading standards,' but also because the school

district did not contest the sufficiency of the complaint within the 15-day window it was afforded

to do so."); *see also Escambia County Bd. of Educ. v. Benton*, 406 F. Supp. 2d 1248, 1259-60

(S.D. Ala. 2005) (explaining that the IDEA "statute does not specify that *all* facts relating to the

parents' dissatisfaction must be spelled out in the notice, much less that every legal theory must be set forth in painstaking detail at the time to avoid waiver.  Such a burdensome, unwieldy standard would far exceed that to which federal court plaintiffs are held, and seems antithetical to the more nimble, less rule-intensive character of administrative proceedings.").

The amended administrative complaint in this case is also distinguishable from the complaints courts have found "insufficient" under 20 U.S.C. § 1415(b)(7)(A).  In *D.F. v. Collingswood Public Schools*, for example, a mother filed a due process complaint alleging that the school had "improperly restrained" her child.  No. 10-594, 2013 WL 103589, at *4 (D.N.J. Jan. 8, 2013).  The defendant school district timely filed a Notice of Insufficiency due to the failure of the plaintiff to assert "any facts related to the allegation that [the plaintiff] was improperly restrained."  *Id.* at *3.  The district court agreed with the defendant and found that "the bare assertion that D.F. was 'improperly restrained'" was insufficient because "[t]he complaint fails to allege *any* facts related to the claim."  *Id.* at *4 (emphasis added).  Similarly, in *M.S.-G. v. Lenape Regional High School District Board of Education*, the Third Circuit upheld the district court's finding that the plaintiff had failed to satisfy the pleading requirements of 20 U.S.C. § 1415(b)(7)(A).  306 Fed. App'x 772, 773 (3d Cir. 2009).  The Third Circuit held that the due process complaint "failed to provide a description of the *nature* of the problem that included facts; he merely identified the problem, in this case, his multiple suspensions."  *Id.* at 775.  In contrast, the plaintiff in this case provided a sufficient factual description of the nature of the problem, namely that A.K. was denied speech and language therapy during her time at Rock Creek Academy.  *See* AR 54-55 (amended administrative complaint, alleging, *inter alia*, that A.K. was denied a FAPE under IDEA when she was not provided speech and language therapy between spring 2003 and June 2008 at Rock Creek Academy, and that, as a result of this denial, A.K. suffered delays in reading ability, is "reading far below grade level," is "experiencing

difficulties accessing the curriculum at Oak Valley[,]" and requesting "compensatory Speech and Language therapy, specialized reading instruction, and tutoring until such time as her reading skills are age and grade appropriate").

Third, the defendant urges the Court that the D.C. Superior Court Rule of Civil Procedure 8 is the pleading standard that should have applied to review of the plaintiff's amended administrative due process complaint.  The defendant cites no authority for its contention, however, nor any authority to the contrary.  *See, e.g., Knight v. Washington Sch. Dist.*, No. 09-cv-00566, 2010 WL 1909581, at \*4 n.4 (E.D. Mo. May 10, 2010) ("§ 1415(b)(7)(A) provides the standard for assessing the sufficiency of due process complaint notice under IDEA, and there is no suggestion in IDEA . . . that state law pleading requirements are applicable or should take precedence.").

Under D.C. Superior Court Rule of Civil Procedure 8, a complaint must contain: "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  But the Hearing Officer in this case did *not* explicitly apply "Sup. Ct. Civ. R. 8," which the defendant argues is the applicable standard, but instead explicitly applied the Federal Rule of Civil Procedure 12(b)(6) pleading standard to determine the sufficiency of the administrative complaint.  *See* AR 8 ("Because counsel for Petitioner failed to meet the notice pleading standards of Fed. R. Civ. P. 12(b)(6) and of this forum, . . . this Hearing Officer dismissed Petitioner's Amended Complaint without prejudice.").[11]  That was plainly in error.  The pleading standard under 20 U.S.C. § 1415 has been described as "minimal."  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005) (stating that 20 U.S.C. § 1415 "has imposed minimal pleading standards").  Furthermore, Congress did

---

[11] The Hearing Officer did not specify what she meant by the pleading standard "of this forum."

not intend for IDEA complaints to be subjected to the rigor of legal pleading standards applied to complaints filed in federal court. *See* S. REP. NO. 108-185, at 34 (2003) ("The committee does not intend for a notice of a due process complaint to reach the level of specificity and detail of a pleading or complaint filed in a court of law."). Rather, Congress wanted school districts to have "an awareness and understanding of the issues forming the basis of the complaint." *Id.* This goal was satisfied here where the plaintiff's due process complaint articulated a claim that DCPS denied A.K. a FAPE by failing to provide her speech and language therapy while she attended Rock Creek Academy.

Fourth, even if the defendant were correct that D.C. Superior Court Rule of Civil Procedure 8 applies to the review of the plaintiff's administrative complaint, the Court finds that the plaintiff did meet that standard here where she satisfied the notice requirements set forth in 20 U.S.C. § 1415(b)(7)(A). Accordingly, for all of these reasons, the Court concludes that the plaintiff's administrative complaint was legally sufficient, and that the Hearing Officer dismissed the amended administrative complaint in error, thereby denying the plaintiff an opportunity for a due process hearing on her claims.

***

Upon a finding that the plaintiff's administrative complaint was legally sufficient, the defendant urges the Court to remand this case, Def.'s Obj. at 2, but the plaintiffs contend, instead, that the Court should resolve the issues raised in the plaintiffs' summary judgment motion, Pls.' Obj. at 6. The Court agrees with the plaintiffs that despite the Hearing Officer's dismissal of the administrative complaint before holding a full hearing, the issues before the Court are, for the most part, either issues of law or issues with sufficient factual basis in the administrative record to be amenable to determination. Moreover, given the amount of time that A.K. has already lost in her educational progress after DCPS removed her from the Lab School

and put her in an educational environment where her educational progress essentially halted, the Court will not put in the hands of the Hearing Office any further opportunity for delay than absolutely necessary.

Specifically, in addition to their claim about the Hearing Officer dismissing the plaintiffs' due process complaint in error, the plaintiffs posit one substantive argument in their motion for summary judgment, namely that (1) the evidence in the AR demonstrates that DCPS denied A.K. a FAPE and that A.K. is therefore entitled to compensatory education services; and six procedural arguments that (1) DCPS violated IDEA safeguards requiring a timely and substantively adequate response to a complaint, (2) DCPS violated IDEA safeguards requiring that DCPS give timely notice of insufficiency of the Complaint, (3) the Hearing Officer erred in failing to decide DCPS' notice of insufficiency, (4) DCPS violated the plaintiffs' IDEA right to a timely HOD, (5) the Hearing Officer erred in ordering the plaintiffs to waive their right to a timely HOD, and (6) DCPS violated IDEA's procedural safeguards when it assigned a Hearing Officer who was not knowledgeable about IDEA.  *See* Pls.' Mem. at 13-28.[12]  The Court addresses the issues raised by the plaintiffs *seriatim* below, first addressing the substantive issue raised by the plaintiffs and then turning to their procedural claims.

### A.    SUBSTANTIVE CLAIM

The Court first turns to the crux of the plaintiffs' summary judgment motion, namely that A.K. was denied a FAPE by DCPS because A.K. did not receive the speech and language therapy she needed as required by IDEA while attending Rock Creek Academy between March

---

[12] The plaintiffs claim, in their Objection to the Report and Recommendation, that the Plaintiffs' Motion for Summary Judgment presented either "14" or "15" issues.  Pls.' Obj. at 5-6.  The Court construes the plaintiffs' Motion for Summary Judgment, however, as presenting the seven discreet arguments listed in the text, Pls.' Mem. at 13-28, in addition to the threshold issue already addressed regarding the sufficiency of the due process complaint and the Hearing Officer's error in dismissing the due process complaint.

19, 2007 and June 2008;[13] was harmed in her education since she did not receive such therapy; and is therefore entitled to summary judgment ordering compensatory education services under IDEA. Pls.' Mem. at 21-27. The record demonstrates that A.K. was diagnosed with multiple learning disorders in reading, speech, and language within the meaning of IDEA. *See* AR 216, 235, 238. The record also shows that A.K. received speech and language therapy that focused on her phonological awareness deficits while attending the Lab School of Washington and Oak Valley Center. S*ee* AR 177, 180-82, 235-36. She did not receive such therapy while attending the Rock Creek Academy, however, where her reading abilities fell several grades below her school grade level. AR 123, 141-45.

The defendant argues that the reason A.K. did not receive speech and language therapy at Rock Creek Academy was simply that her 2006 IEP did not require it. Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Facts"), ECF No. 46-2, ¶ 6. The defendant concedes, however, that in 2007, A.K.'s IEP was updated to include a half-hour per week of such therapy, but it was not provided to A.K. because of staff shortages at Rock Creek Academy (of which plaintiff Clay was notified). *Id.* ¶¶ 8-9; *see also* AR 16, 26 (Hearing Tr.) (DCPS stipulated that A.K. missed 11.6 hours of speech training: "[O]ur stipulation that we're willing to offer is that during the 2007-2008 school year, the student missed approximately 11.6 hours of speech services due to Rock Creek not having a therapist"); AR 214 (Letter dated March 6, 2008 from Rock Creek Academy to "Parent or Guardian," explaining that "Your son/daughter has speech and language therapy as part of their most recent [IEP]" but the "student is not currently receiving this service due to a current recruiting/staffing shortage").

---

[13] The plaintiffs' counsel made clear in the underlying administrative proceedings that "on the speech therapy issue," the plaintiffs were only "contesting" the time period between 2007-2008 at Rock Creek. AR 28 (Hearing Tr.); AR 32 (Hearing Tr.) (clarifying that the plaintiffs' claims related to March 2007 through June 2008, a period of a year and 3 months); *see also* Pls.' Mem. at 23 (arguing that "[a]lthough DCPS [k]new that A.K. [r]equired [s]peech [t]herapy and [k]new [t]hat A.K. [w]as [n]ot [l]earning to [r]ead, DCPS [d]id [n]ot [p]rovide [s]peech [t]herapy [b]etween March 19, 2007 and June 2008").

The Court finds that the defendant's stipulation in the administrative hearing, with clarifications by the DCPS counsel, and concessions in this litigation, make amply clear that the defendant failed to implement A.K.'s 2007 IEP, which required speech therapy for A.K., and furthermore that the plaintiffs have raised significant questions regarding whether she was due speech therapy even before the 2007 IEP.  Accordingly, since A.K. was not provided speech therapy in the period between March 19, 2007 and June 2008, she was denied a FAPE, namely in the form of at least 11.6 hours of speech therapy, while at Rock Creek Academy.

The remedy under IDEA for a denial of a FAPE is the provision of compensatory education services.  *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 276 (D.D.C. 2011) ("Compensatory education is, as the term suggests, educational service that is intended to compensate a disabled student who has been denied the individualized education guaranteed by the IDEA.").  For these reasons, the Court concludes that A.K. was denied a FAPE by the defendant during the period between March 19, 2007 and June 2008 because of the denial of speech therapy, and that the defendant must therefore provide A.K. with compensatory education services.

The Court's goal in awarding compensatory education is to "place disabled children in the same position they would have occupied but for the school district's violations of IDEA."  *Id.* (citing *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)).  If the record does not allow the district court to make an informed decision as to the proper amount of compensatory education necessary to fulfill this goal, it should remand to the Hearing Officer for further proceedings and to conduct additional fact-finding as necessary.  *Wilson,* 770 F. Supp. 2d at 277 (noting that where the record does not allow for "a fact-specific exercise of discretion designed to identify those services that will compensate the student . . . remand or additional fact-finding is necessary" (citations and internal quotation marks omitted)).

While it is clear from the AR and the defendant's concessions that A.K. was denied at least 11.6 hours of speech therapy, her speech therapy was increased significantly at Oak Valley. *See* Def.'s Mem. at 5 (citing AR 177, IEP) (noting that following the October 2008 IEP meeting, A.K.'s IEP was revised to include three hours a week of speech/language therapy); AR 171 ("Evaluation Five") (final evaluation available in the record, from March 2009, noting that "[t]he diagnostic learning evaluation indicates that [A.K.] will benefit from intervention to develop her language and literacy skills. Intensive instruction, (6 hours a day, 5 days a week) is recommended for an initial period of 10-12 weeks."). Thus, the levels of speech therapy A.K. received at Oak Valley may have been the appropriate levels all along, and A.K. may well have been denied much more than 11.6 hours of speech therapy. The Hearing Officer will need to conduct fact-finding to establish the amount of speech and language therapy or other specialized instruction A.K. was deprived in the period between March 19, 2007 and June 2008, and determine the level of compensatory education services A.K. requires to place her in the same position she would have been but for DCPS' IDEA violations during the period at issue. The Court will thus remand this question to the Hearing Officer for a determination.

## B.     PROCEDURAL CLAIMS

The Court next turns to the procedural claims raised by the plaintiffs in their Motion for Summary Judgment. As explained below, the defendant concedes that it committed some procedural violations in the underlying administrative process, but argues generally in response to the plaintiffs' procedural claims that the "[d]efendant did not [c]ommit any [p]rocedural [v]iolations of the IDEA that [r]esulted in [s]ubstantive [h]arm to A.K." Def.'s Mem. at 16. The Court addresses the plaintiffs' claims *seriatim* below.

"A procedural violation of the IDEA 'can itself constitute the denial of a free appropriate education.'" *O.O. ex rel. Pabo v. District of Columbia*, 573 F. Supp. 2d 41, 47 (D.D.C. 2008)

(quoting *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003)).  Yet, an

IDEA claim that DCPS violated its procedural obligations is "viable only if those procedural

violations affected the student's *substantive* rights."  *Lesesne ex rel. B.F. v. District of Columbia*,

447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis in original) (citing, *inter alia*, *Kruvant v. District*

*of Columbia*, 99 Fed. Appx. 232, 233 (D.C. Cir. 2004)) (denying relief under IDEA because

"although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA

eligibility within 120 days of her parents' request, the [parents] have not shown that any harm

resulted from that error").  "In the absence of a showing that the child's education was

substantively affected, no relief may be awarded."  *O.O. ex rel. v. District of Columbia*, 573 F.

Supp. 2d at 47.

> The Court will briefly address the plaintiffs' allegations of procedural violations in turn.

### 1.   Plaintiffs' Allegation that DCPS Violated IDEA Safeguard Requiring a Timely and Substantively Adequate Response to Complaint

> The Court first addresses the plaintiffs' claim that DCPS violated their IDEA procedural

rights by failing to respond to the plaintiff's administrative complaint within 10 days after it was

filed and that DCPS' eventual response violated their IDEA rights.  Pls.' Mem. at 15-17; *see* 20

U.S.C. § 1415(c)(2)(B).  The defendant contends that although its response was untimely, it did

not result in any harm to A.K.  Def.'s Mem. at 18-19.  As explained below, while the Court finds

that the defendant's response to the complaint was both untimely and inadequate, the Court

agrees with the defendant that these deficiencies did not substantively harm A.K.

> First, as to the timeliness of the defendant's response to the administrative complaint, the

DCPS apparently did not respond to the plaintiff's original complaint filed March 19, 2009.  Am.

Compl. at 6-7, 10.  The plaintiff filed an amended complaint on April 2, 2009, to which DCPS

responded on April 24, 2009, well after the ten-day statutory requirement.  Pls.' Statement of

Material Facts Not in Genuine Dispute in Supp. of Their Mot. for Summ. J. ("Pls.' Facts"), ECF No. 41-1, ¶¶ 2, 15-16.  Indeed, DCPS concedes that its response was untimely.  Def.'s Resp. to Pls.' Statement of Material Facts ("Def.'s Resp. to Pls.' SOF"), ECF No. 46-1, ¶¶ 2, 15-16.

Second, the plaintiffs claim that DCPS also erred in not complying with the IDEA requirement that the agency, in its response, explain why the agency failed to take the action requested in the complaint, a description of other treatment options considered, a description of each evaluation procedure used as a basis for refusing the action, and the factors relevant to the agency's refusal.  *See* AR 88-92; 20 U.S.C. § 1415(c)(2)(B)(i)(I).  Instead, DCPS' response, entitled "Response, Notice of Insufficiency, and Motion to Dismiss," only asserted defenses for why the plaintiff's administrative complaint was insufficient and should be dismissed.  AR 88-92.  While the defendant concedes that its response "was untimely and did not contain certain information," it argues that "certain information" was missing because the defendant believed that the amended complaint was "deficient" and was moving for it to be dismissed.  Def.'s Reply to Pls.' Opp'n to Def.'s Cross Mot. for Summ. J. ("Def.'s Reply"), ECF No. 53, at 2.  The Court finds, however, that any perceived deficiency in the administrative complaint did not excuse the defendant from the obligation that it "shall, within 10 days of receiving the complaint, send to the parent a response" responding to the complaint per its statutory obligation.  20 U.S.C. § 1415(c)(2)(B)(i)(I).  In other words, "'DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA. . . . [T]he IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate.'"  *Jalloh ex rel. R.H. v. District of Columbia*, 535 F. Supp. 2d 13, 20 (D.D.C. 2008) (quoting *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 72-73 (D.D.C. 2005)).  In this case, even as DCPS acknowledged in its response that A.K. was denied 11.6 hours of speech therapy at Rock Creek Academy, it did not respond directly to the plaintiff's claim that A.K. was

not provided speech and language therapy "[t]hroughout the period that DCPS placed [A.K.] at Rock Creek Academy," and that she "experienced increasing delays in her Reading abilities, as a result." AR 54. Instead, DCPS offered only a conclusory statement that Rock Creek Academy "is not aware of any educational harm to the student from the missed hours" and that "it is DCPS' position in this matter that Petitioner has received the basic floor of opportunity guaranteed by the IDEIA, and all relief should be denied." AR 90-91. The response does not, pursuant to the IDEA statutory requirement, include "a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action" or "a description of the factors that are relevant to the agency's proposal or refusal." 20 U.S.C. § 1415(c)(2)(B)(i)(I). Thus, "[t]here can be no serious question that DCPS's Response . . . was inadequate as measured against the[] statutory commands." *Jalloh*, 535 F. Supp. 2d at 19.

While the Court agrees with the plaintiffs that the defendant did not provide a timely or substantively adequate response to the administrative complaint, the plaintiffs have not shown that these errors specifically resulted in the requisite substantive harm to A.K. *See Lesesne ex rel. B.F.*, 447 F.3d at 834. In this case, at the time that the plaintiff received the DCPS' inadequate response, the parties were planning a due process hearing where the plaintiff should have had the opportunity to offer expert witnesses and prove her claims. The fact that the DCPS inadequately responded to the complaint did not prevent the plaintiff from having a due process hearing on her claims. Rather, it was the Hearing Officer's decision to dismiss the complaint, instead of resolving any perceived lack of clarity in the complaint before scheduling the due process hearing, that denied the plaintiff an opportunity for a due process hearing.

Since the plaintiff never had the opportunity to address the merits of her claims in the due process hearing, it is unclear whether the defendant's failure to adequately respond to the complaint would have caused any harm to A.K.'s substantive rights. Thus, while the Court is

sympathetic to the plaintiffs' frustration at the DCPS' inadequate response to the serious claims that A.K. was denied speech and language therapy, which led to deficiencies in her academic progress, the plaintiffs simply cannot show that A.K. suffered any prejudice specifically from the defendant's inadequate response to the administrative complaint. *See, e.g., Jalloh*, 535 F. Supp. 2d at 19-20 (finding DCPS' response to the plaintiff's complaint "inadequate" where the response did not respond to two of the plaintiff's four claims, and incompletely responded to the remaining two claims, but concluding that the "abbreviated [r]esponse from DCPS" had not "prejudiced her in any way" and that her presentation at the hearing "was limited" for other reasons); *Sykes v. District of Columbia*, 518 F. Supp. 2d 261, 266-67 (D.D.C. 2007) (concluding, where DCPS' response to the plaintiff's administrative complaint included *none* of the required explanations, that the plaintiff had not shown that the child had "suffered substantive injury due to DCPS' administrative failure in their form of response").

> **2.  Plaintiffs' Allegations that DCPS Violated IDEA Safeguards Requiring that DCPS Give Timely Notice of Insufficiency, and that the Hearing Officer Erred in Failing to Decide DCPS' Notice of Insufficiency**

The Court next turns to the plaintiffs' argument that DCPS violated IDEA by filing its Notice of Insufficiency in response to the administrative complaint after the fifteen-day time limit set by IDEA.  Pls.' Mem. at 10; 20 U.S.C. §§ 1415(c)(2)(A)-(C).  The DCPS concedes, as it must, that it filed its Notice of Insufficiency after the fifteen-day time limit since it filed the notice on April 24, 2009, twenty-two days after the administrative complaint was filed on April 2, 2009.  Def.'s Resp. to Pls.' SOF ¶¶ 17-18.  While the Court agrees with the defendant that the DCPS filed an untimely Notice of Insufficiency, the plaintiffs have not shown that this caused A.K. any harm.  On the contrary, the DCPS' failure to file a Notice of Insufficiency in a timely manner should have meant that the administrative complaint was deemed "sufficient" under 20

U.S.C. § 1415(c)(2)(A), and the plaintiff should have had the opportunity for a due process hearing on the merits of her claims.

In a related point, the plaintiffs claim that the Hearing Officer violated their rights under IDEA by failing to make a determination as to the complaint's sufficiency within five days of receiving the Notice of Insufficiency.  Pls.' Mem. at 10-11; *see* 20 U.S.C. § 1415(c)(2)(D).  The Hearing Officer would have been correct not to rule on the defendant's Notice of Insufficiency within five days, however, because DCPS' Notice of Insufficiency violated the IDEA's procedural requirement for a Notice of Insufficiency to be filed within fifteen days of receiving the plaintiff's administrative complaint as required by 20 U.S.C. §§ 1415(c)(2)(A)-(C).  AR 6.[14] In any case, the plaintiffs' argument that the Hearing Officer's inaction was a procedural violation that caused substantive harm to A.K. is unavailing.

### 3. Plaintiffs' Allegations that DCPS Violated Plaintiff's IDEA Right to a Timely Hearing Officer Determination, and that the Hearing Officer Erred in Ordering the Plaintiff to Waive Right to a Timely HOD

The Court next addresses the plaintiffs' claim that DCPS violated IDEA's procedural safeguard requiring a HOD within forty-five days after filing an administrative complaint.  *See* Pls.' Mem. at 13-14.  The plaintiff filed an administrative complaint on March 18, 2009 and an amended complaint on April 2, 2009.  *Id.* at 9.  Under the relevant regulations, the forty-five-day timeline begins following a thirty-day "resolution period" unless, *inter alia*, "[b]oth parties agree in writing to waive the resolution meeting."  34 C.F.R. § 300.510(c).  The plaintiffs argue that both parties waived the resolution meeting and, therefore, a HOD was required by May 17, 2009, which was forty-five days after the filing of the amended complaint.  *See* AR 52; Pls.' Reply to Def.'s Opp'n to Pls.' Mot. for Summ. J ("Pls.' Reply"), ECF No. 48, at 6-8; 34 C.F.R. §§

---

[14]  As noted, the Hearing Officer ruled on the Notice of Insufficiency by denying it, but the HOD states incorrectly that she did not rule on it.

300.515(a), 300.510(c).  The defendant argues, however, that the right to a resolution meeting

was waived by the plaintiffs but "there is no evidence in the Administrative Record that DCPS

joined in this waiver," so the HOD did not have to be issued until forty-five days after the thirty

day resolution period ended.  Def.'s Mem. at 16-17.  Thus, the defendant argues that under this

timeline, the HOD did not have to be issued until June 16, 2009.  *Id.* at 17.

      The plaintiffs point to two documents in support of their argument that the "parties

waived their rights to a dispute resolution meeting in this instance."  Pls.' Mem. at 13-14.  First,

the plaintiffs cite to a document entitled "Report of the Evaluation Team for the 2007-2008

School Year at 56 Doc. 2118."  *Id.* at 14 n.1.  This document is from another case,[15] does not

appear to be in the AR in this case, was not furnished to the Court, and the plaintiffs do not

explain how this document supports their argument.

      Second, the plaintiffs, in their reply to the defendant's opposition to the plaintiffs' motion

for summary judgment, submitted as an exhibit a template of a form entitled "Due Process

Hearing Notice," which states that "On February 21, 2008, DCPS notified the Student Hearing

Office that it will agree to waive resolution meetings in all cases where a complaining party

requests such a waiver.  Until such time as DCPS notifies the [Student Hearing Office]

otherwise, the [Student Hearing Office] will treat the applicable timelines as beginning the day

after a complaint requesting such a waiver is filed."  Due Process Hearing Notice, ECF No. 48-2.

Based upon the plain language of this DCPS form, the plaintiffs contend that DPCS has "waived

resolution meetings as to all due process complaints in which the parent waived a resolution

meeting."  Pls.' Reply at 6-7.  Unfortunately, the template is not dated and there is no way for

this Court to determine whether it was a general policy of the DCPS in effect at the time of the

---

[15] In their reply brief, the plaintiffs indicate that this report was filed in another case called "Blackman v. D.C. Civ.
Action (filed Aug. 28, 2008)."  Pls.' Reply at 7.

administrative proceedings in this case.  Furthermore, the form states that "the [Student Hearing Office] will treat the applicable timelines as beginning the day after a complaint requesting such a waiver is filed," Due Process Hearing Notice, ECF No. 48-2, and it is unclear whether that means the day after a complaint is filed or whether there is another kind of "complaint" that must be filed specifically requesting a waiver.  The defendant provides no clarification, nor explains why this template, which is not included in the AR, was not applicable in this case.  Nevertheless, the Court need not rely on this template form to determine that the DCPS waived the resolution meeting.

While the defendant is correct that there is no *written waiver* of a resolution meeting in the AR, the plaintiff is correct that, had the DCPS not waived the resolution meeting, the AR would necessarily contain other documentation.  Specifically, pursuant to 20 U.S.C. § 1415(f)(B), if there is no waiver of the resolution meeting, then "within 15 days of receiving notice of the parents' complaint" and "[p]rior to the opportunity for an impartial due process hearing . . . the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint[.]"  If the resolution meeting is not waived, and the parent does not participate in the resolution meeting, the DCPS must "document[ ]" its "reasonable efforts" "to obtain the participation of the parent in the resolution meeting."  34 C.F.R. § 300.510.  Here, where there is no documentation in the record that the DCPS made reasonable efforts to obtain the participation of A.K.'s grandmother in a resolution meeting, it is clear that the DCPS did in fact waive the resolution meeting.  *See id.* ("the LEA *must* convene a meeting with the parent and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the due process complaint" unless, *inter alia*, "[t]he parent and the LEA agree in writing to waive the meeting") (emphasis added).

In a related point, the plaintiffs claim that the Hearing Officer forced them to waive their statutory right to receive a HOD within forty-five days after the filing of their administrative complaint. Pls.' Mem. at 14-15. The defendant claims that scheduling conflicts necessitated the plaintiff's request for a continuance for issuing the HOD. *See* Def.'s Statement of Material Facts ("Def.'s SOF"), ECF No. 46-2, ¶¶ 33, 36. Extensions of the forty-five-day time requirement for a HOD may be granted at the request of a party, 34 C.F.R. § 300.515, and in this case the plaintiff filed for a continuance. The plaintiffs argue, however, that the request for an extension was not made voluntarily because the Hearing Officer refused to schedule a due process hearing unless the plaintiff requested a continuance and waived her rights to a timely HOD. Pls.' Facts ¶¶ 11-13. Indeed, it is clear that the plaintiff only filed a motion for continuance because the Hearing Officer required it, and furthermore, that the plaintiff was available for a hearing in April of 2009, when the Hearing Officer had originally scheduled it, and was actively seeking a hearing date on the amended complaint that would have allowed for a timely HOD following the filing of the amended complaint. *See, e.g.*, AR 103 (Email from Plaintiffs' counsel to Hearing Officer, dated April 16, 2009) (informing the Hearing Officer that she was available on April 22, 2009 and would prefer to have the proceeding before April 29, 2009); AR 104 (Email from Plaintiffs' counsel to Hearing Officer, dated April 21, 2009) (inquiring when a "new provisional notice of hearing and notice of PHC [pre-hearing conference]" would issue). While the defendant is correct that the plaintiff eventually suggested a May 18, 2009 hearing date, it is clear from the record that the DCPS' lack of diligence in scheduling the hearing was a contributing factor in delaying the proceedings. *See, e.g.*, AR 103 (Email from Hearing Officer to the parties, dated April 23, 2009) ("I STILL have not heard from [DCPS counsel] about the date and time for the prehearing conference. I had suggested several dates, of which only April

30 is still available.  I am available after 4:00 p.m.") (emphasis in original).  In sum, it was an error to require the plaintiff to waive her right to a timely HOD.

These procedural violations have resulted in a delay in A.K. receiving the compensatory speech therapy to which this Court has determined she was entitled.  The Hearing Officer should consider this delay when calculating the amount of compensatory education A.K. should receive.

### 4. Plaintiffs' Allegation that the Defendant Violated IDEA's Procedural Safeguards When it Assigned a Hearing Officer Who Was Not Knowledgeable about IDEA

Finally, the Court turns to the plaintiffs' claim that the defendant violated procedural safeguards of IDEA when a Hearing Officer was assigned to the case who was not knowledgeable about IDEA.  *See* Pls.' Mem. at 27-28; 20 U.S.C. § 1415(f)(3)(A)(ii).  While the Hearing Officer condoned procedural violations, did not schedule the hearing in a timely manner, and made conflicting and confusing statements about the sufficiency of the administrative complaint and the basis for her dismissal of the complaint, the plaintiffs have not shown that the Hearing Officer was not "knowledgeable" about IDEA.  The Hearing Officer committed legal errors and issued inconsistent rulings that resulted in dismissal of the administrative complaint and led to this prolonged litigation in federal court, but there is no evidence in the record that this was due to the Hearing Officer's lack of knowledge about IDEA.

Accordingly, it hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment, ECF No. 41, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment, ECF No. 46, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that this matter is **REMANDED** to the Hearing Officer to conduct a "fact-specific exercise of discretion," *Wilson*, 770 F. Supp. 2d at 277, to determine the amount of

speech and language therapy or other specialized instruction that A.K. was deprived in the period

between March 19, 2007 and June 2008, and what she requires in compensatory education

services to place her in the same position where she would have been but for DCPS denying her

a FAPE by not providing her speech and language therapy in that period.  Any determination of

the Hearing Officer must at least compensate A.K. for the 11.6 hours of speech therapy that the

DCPS concedes that A.K. was deprived, although the Hearing Officer is directed to conduct a

full factual inquiry to determine whether A.K. was denied additional hours of speech therapy

during this period, and if so, how many hours, and to determine the appropriate level of

compensatory education required; and it is further

**ORDERED** that the Hearing Officer should consider the Court's finding that the HOD

was released in an untimely manner and consider that delay in the calculation of the

compensatory education to which A.K. is entitled.

**SO ORDERED.**

**Date:**  April 24, 2013

/s/ *Beryl A. Howell*___
BERYL A. HOWELL
United States District Judge